IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANTHONY BACCARI on behalf of     :
themselves and others similarly situated,  :
                                 :
       Plaintiff,            :    Case No. 1:20-cv-11510-DJC
                                 :
v.                             :
                                 :
                               :
SUNPATH, LTD. and LAND & SKY    :
INVESTMENTS LLC d/b/a          :
AFFORDABLE AUTOMOTIVE      :
SOLUTIONS                  :
                               :
       Defendants.         :
                               :
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.     Plaintiff Anthony Baccari bring this action to enforce the consumer-privacy provisions of the TCPA. Land & Sky Investments LLC d/b/a Affordable Automotive Solutions ("Affordable Automotive Solutions") makes automated telemarketing calls to originate new warranty customers, including for the Defendant Sunpath Ltd. ("Sunpath"). Affordable

Automotive Solutions initiated a series of pre-recorded telemarketing calls to a cellular telephone number of Mr. Baccari as well as the cellular telephone of other putative class members, which is prohibited by the TCPA.

3.      The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4.      A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.      Plaintiff Anthony Baccari is a resident of the Commonwealth of Pennsylvania.

6.      Defendant Sunpath, Ltd. is a Delaware corporation that has its principal office in Braintree, MA, and conducts business in this District.

7.      Land & Sky Investments LLC d/b/a Affordable Automotive Solutions is a Florida limited liability company.

8.      Affordable Automotive Solutions engages in telemarketing nationwide, including into this District.

9.      Affordable Automotive Solutions also entered a contract with Sunpath in this District.

**Jurisdiction & Venue**

10.     The Court has federal question subject matter jurisdiction over these TCPA

claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are

residents of this district for Venue purposes. Venue is also proper pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred

in this district as the telemarketing calls that gave rise to the Plaintiff's claims were made into

this district, and the Plaintiff's cellular telephone, a substantial portion of the property at issue

for these claims, are located in this district.

**The Telephone Consumer Protection Act**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

13.     The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

§ 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the

agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

17.     To generate new clients, Affordable Automotive Solutions relies on telemarketing.

18.     Affordable Automotive Solutions employs the use of pre-recorded messages, which require the consumer to affirmatively respond to an automated message before they can speak with a live person.

19.     Affordable Automotive Solutions engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

20.     Through this method, Affordable Automotive Solutions shifts the burden of wasted time to the consumers it calls with unsolicited messages.

21.     Sunpath is a company that offers extended warranties on automobiles.

22.     Some of Affordable Automotive Solutions' calls are made for the benefit of Sunpath.

Call to Mr. Baccari

23.     Mr. Baccari is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

24.     Mr. Baccari's cellular telephone number is (856) 625-XXXX.

25.     Mr. Baccari received a series of pre-recorded calls about automobile warranties in May, June and July of 2020.

26.     Affordable Automotive placed a pre-recorded call to Mr. Baccari for Sunpath on July 6, 2020.

27.     The company was not identified in the pre-recorded message, so the Plaintiff responded to try to identify the company.

28.     The caller offered warranty services.

29.     Confirming the call, Affordable Automotive sent the Plaintiff an e-mail.

30.     The e-mail was from "Michael Q."

31.     The e-mail had Affordable Automotive's information in the signature block.

32.     The e-mail had a policy offer from Sunpath.

33.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

34.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## Sunpath's Liability for the Telemarketing Call

35.     Sunpath is a "person," as defined by 47 U.S.C. § 153(39).

36.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

38.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Sunpath may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties in many cases would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

39.     More specifically, the May 2013 FCC Ruling held that, even in the absence of

evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make

the calls.  28 FCC Rcd at 6586 (¶ 34).

40.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including

the assertion that a seller's liability requires a finding of formal agency and immediate direction

and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

41.     The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows
> the outside sales entity access to information and systems that normally
> would be within the seller's exclusive control, including: access to detailed
> information regarding the nature and pricing of the seller's products and
> services or to the seller's customer information. The ability by the outside
> sales entity to enter consumer information into the seller's sales or customer
> systems, as well as the authority to use the seller's trade name, trademark
> and service mark may also be relevant. It may also be persuasive that the
> seller approved, wrote or reviewed the outside entity's telemarketing
> scripts.  Finally, a seller would be responsible under the TCPA for the
> unauthorized conduct of a third-party telemarketer that is otherwise
> authorized to market on the seller's behalf if the seller knew (or reasonably
> should have known) that the telemarketer was violating the TCPA on the
> seller's behalf and the seller failed to take effective steps within its power
> to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

42.     Sunpath is legally responsible for ensuring that Affordable Automotive Solutions

complied with the TCPA, even if Sunpath did not itself make the calls.

43.     Sunpath knowingly and actively accepted business that originated through the

illegal telemarketing calls from Affordable Automotive Solutions.

44.     Sunpath does not regularly audit the business practices of the call centers it hires.

45.     In fact, Sunpath accepted the business from illegal calls from Affordable Automotive Solutions, even while it was being sued in another TCPA putative class action alleging that the third parties working on its behalf were violating the TCPA.

46.     By hiring a company to make calls on its behalf, Sunpath "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

47.     Similarly, by accepting these contacts, Affordable Automotive Solutions "manifest[ed] assent or otherwise consent[ed]  . . . to act" on behalf of Sunpath, as described in the Restatement (Third) of Agency. As such, Affordable Automotive Solutions is an agent of Sunpath.

48.     Moreover, Sunpath maintained interim control over Affordable Automotive Solutions's actions.

49.     For example, Sunpath had absolute control over whether, and under what circumstances, it would accept a customer.

50.     Furthermore, Sunpath had day-to-day control over Affordable Automotive Solutions' actions, including the ability to prohibit it from using pre-recorded messages to contact potential customers of Sunpath. Sunpath failed to make such an instruction to these companies, and as a result, is liable for Affordable Automotive Solutions conduct.

51.     Additionally, Sunpath restricted the geographic location that Affordable Automotive Solutions could promote Sunpath.

52.     Sunpath also gave Affordable Automotive Solutions the power to affect its legal relations. In fact, Sunpath is believed to give the third parties that call on their behalf, including

the co-defendants, a form contract to use to sign up new customers that receive telemarketing

calls that include the following terms:

- "this SERVICE CONTRACT is between YOU and SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware" (defined in the contract as the "ADMINISTRATOR)
- "Sunpath is also the SERVICE CONTRACT ADMINISTRATOR and handles all administrative functions of this SERVICE CONTRACT."
- "All inquiries should be directed to SunPath LTD Corp. of Delaware at 888-990-7786."
- "the ADMINISTRATOR will approve the claim and pay the charges in accordance with the terms of this SERVICE CONTRACT"

53.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence

of these kinds of relationships . . . through discovery, if they are not independently privy to such

information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent

authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden

of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer

was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

54.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil

Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities

similarly situated.

55.     The classes of persons Plaintiff propose to represent is tentatively defined as:

TCPA CLASS

All persons within the United States to whom: (a) Affordable Automotive Solutions and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

SUNPATH SUBCLASS

All persons within the United States to whom: (a) Affordable Automotive
Solutions and/or a third party acting on their behalf, made one or more non-
emergency telephone calls; (b) to their cellular telephone number; (c) using
an artificial or prerecorded voice; and (d) where Sunpath goods or services
were advertised on the call (e) at any time in the period that begins four
years before the date of filing this Complaint to trial.

56.     Excluded from the classes are the Defendants, and any entities in which the

Defendants have a controlling interest, the Defendants' agents and employees, any judge to

whom this action is assigned and any member of such judge's staff and immediate family.

57.     The classes as defined above are identifiable through phone records and phone

number databases.

58.     The potential classes number at least in the thousands, since automated and pre-

recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day.

Individual joinder of these persons is impracticable.

59.     Plaintiff is a member of the classes.

60.     There are questions of law and fact common to Plaintiff and to the proposed

classes, including but not limited to the following:

a.      Whether Defendants placed calls using a pre-recorded message;

b.      Whether Defendants placed calls without obtaining the recipients' prior

consent for the call;

c.      Whether the Plaintiff and the classes members are entitled to statutory

damages because of Defendants' actions.

61.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

62.     Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in classes actions, including TCPA class actions.

63.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

64.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

65.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

66.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the classes' membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Calling provisions**

67.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

68.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an artificial or prerecorded voice.

69.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

71.     The Defendants' violations were negligent and/or knowing.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed Classes;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that Defendants and/or its affiliates, agents, and/or other related

entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants and/or its affiliates, agents, and/or other related

entities, as provided by law, from making calls, except for emergency purposes, to any cellular

telephone numbers using an artificial or prerecorded voice in the future.

F.      An award to Plaintiff and the Classes of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com